AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Western District of Arkansas

El Dorado Division

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Premises located at 33 Riverside Courts, Camden,<br>Arkansas 71701 | )<br>)<br>)<br>)<br>)    Case No. 1:24-CM-00029 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Premises located at 33 Riverside Courts, Camden, Arkansas 71701, more particularly described on Attachment A.

located in the    **Western**    District of    **Arkansas**   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2252A(a)(1) | Transportation of Child Pornography |
| 18 USC 2252A(a)(2) | Receipt and Distribution of Child Pornography |
| 18 USC 2252A(a)(5)(B) | Possession of or Access with Intent to View Child Pornography |

The application is based on these facts:

- ☑ Continued on the attached sheet. **Affidavit of FBI Special Agent Warren W. Rooney.**
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Warren W. Rooney (telephonically)
*Applicant's signature*

Warren W. Rooney, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
     telephone      *(specify reliable electronic means)*.

Date: October 25, 2024 @ 2:35pm

*Judge's signature*

City and state:   Fayetteville, Arkansas      Christy D. Comstock, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF LOCATION TO BE SEARCHED

The **TARGET PREMISES**, as pictured below, is a single-story multi-unit residential structure located at 33 Riverside Courts, Camden, Arkansas 71701. The **TARGET PREMISES** has red brick siding, a dark metal roof, and has the number 33 above the front door. The unit is the fourth door on the south-side of the building whose long-axis is generally oriented North to South located at the intersection of Pine Street SE and Secession Avenue SE. This warrant authorizes the entry and search of the entire dwelling located on the **TARGET PREMISES**, including all rooms, closets, storage areas, attics, and basements. This warrant authorizes the entry and search including all internal and external compartments and all containers that may be associated with the storage of digital records or information of the following vehicles: (A) Vehicles that are located at the **TARGET PREMISES** that are either (i) registered to an individual who is present at the **TARGET PREMISES** or (ii) under the dominion and control of an individual who is present at the **TARGET PREMISES** during the execution of the search warrant. This warrant authorizes the search of any person that is located at the **TARGET PREMISES** during the execution of the search warrant. This warrant authorizes the seizure and search of the device assigned to or associated with the phone number 870-675-8719, provided that it is located within the Western District of Arkansas at the time of the seizure.

1





2

For purposes of this Search Warrant, "**TARGET PREMISES**" also specifically includes any and all electronic devices located on or within any portion of the premises described herein, which devices are of a type generally capable of creating, storing, downloading, uploading, transmitting, viewing and/or in any way containing records, files, information, and/or any other evidence, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 2252A(a)(1), Transportation of Child Pornography; 2252A(a)(2), Receipt and Distribution of Child Pornography and Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child Pornography or Access with Intent to View Child Pornography.

## ATTACHMENT B

### Particular Things to be Seized

1.      All records on the electronic devices and evidence located in the **TARGET**
**PREMISES** described in Attachment A that relate to violations of Title 18, United States Code,
Sections 2252A(a)(1), Transportation of Child Pornography; 2252A(a)(2), Receipt and
Distribution of Child Pornography and Title 18, United States Code, Section 2252A(a)(5)(B),
Possession of Child Pornography or Access with Intent to View Child Pornography including:

    a.  Information that reflects an interest in, or access to, any and all known child
pornography web sites, and members-only sites or internet groups in any form
wherever it may be stored or found, including hard copy or digital notes, files, or
logs.

    b.  Images of child pornography and files containing images of child pornography in
any form wherever they may be stored or found.

    c.  Any computer, computer system and related peripherals; cellular telephones, tapes,
cassettes, cartridges, streaming tape, commercial software and hardware, computer
disks, disk drives, monitors, computer printers, modems, tape drives, disk
application programs, data disks, system disk operating systems, magnetic media
floppy disks, hardware and software operating manuals, tape systems and hard
drive and other computer related operation equipment, digital cameras, scanners,
computer photographs, Graphic Interchange formats and/or photographs,
undeveloped photographic film, slides, and other visual depictions of such Graphic
Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and
MPEG), any computer programs capable of viewing any graphic files, and any
electronic data storage devices including, but not limited to hardware, software,

4

diskettes, backup tapes, CD-ROMS, DVD, Flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to passwords, data security devices and related documentation, and any hardware/software manuals related to or used to visually depict child pornography or child erotica; contain information pertaining to the interest in child pornography; and/or distribute, receive, or possess child pornography, or information pertaining to an interest in child pornography, child erotica or information pertaining to an interest in child pornography; and any text files containing information pertaining to the interest in child pornography or sexual activity with children and/or pertaining to the sale, receipt, distribution, or possession of child pornography.

d. Any and all removable electronic storage devices including, but not limited to: CD's, DVD's, external hard drives, thumbdrives, etc., that could contain pornography.

e. Originals, copies, and negatives of child pornography, as defined in 18 U.S.C. §2256.

f. Motion pictures, films, videos, and other recordings of child pornography, as defined in 18 U.S.C. § 2256.

g. Information or correspondence pertaining to the possession, receipt, or distribution of child pornography, as defined in 18 U.S.C. § 2256, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail.

h. Envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access

to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of child pornography, as defined in 18 U.S.C. § 2256.

i.   Books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any child pornography, as defined in 18 U.S.C. § 2256.

j.   Credit card information including but not limited to bills and payment records to establish ownership.

k.   Records evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence.

2.    Records or other items which evidence ownership or use of any computer equipment found in the above residence, including, but not limited to, sales receipts, bills for Internet access, handwritten notes, registry and setup information within the computer's operating system and customized changes made to the operating system's directory structure.

3.    This warrant authorizes law enforcement officers to press the fingers (including thumbs) of DENTON to the Touch ID sensor of the Cellular Phone or present DENTON's iris or face to the device's camera in an attempt to unlock the device via Touch ID or Facial Recognition to search the contents as authorized by this warrant.

6

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Warren W. Rooney, a Special Agent with the Federal Bureau of Investigation (FBI), being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 33 Riverside Courts, Camden, Arkansas, 71701 hereinafter "**TARGET PREMISES**", which is in the Western District of Arkansas, further described in Attachment A, for the things described in Attachment B.

2.      I have been employed as a Special Agent (SA) of the FBI since July 2022. I was previously employed as a Commissioned Officer in the United States Marine Corps. I am currently assigned to the El Dorado Resident Agency of the Little Rock Division within the FBI. During my employment with the FBI, I have received training concerning and been involved in the investigations of numerous federal offenses to include violations of violent crimes against children involving human trafficking, enticement, and child prostitution, as well as child pornography offenses including production, transportation, receipt, distribution, advertisement, or possession.

3.      The facts and statements contained in this affidavit are based, in part, on information provided by FBI Special Agents; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; information gathered from the service of subpoenas; the results of physical surveillance conducted by law enforcement agents; and independent investigation and analysis by FBI agents/analysts. Additionally, this affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

1

4.      Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that evidence, fruits, and instrumentalities of the following violations is presently located at the **TARGET PREMISES**: Title 18, United States Code, Sections 2252A(a)(1), Transportation of Child Pornography; 2252A(a)(2), Receipt and Distribution of Child Pornography and Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child Pornography or Access with Intent to View Child Pornography.

5.      I am requesting authority to search the entire premises, including the vehicles located at the **TARGET PREMISES,** and any computers and computer media, including cellular telephones and external storage devices, located therein where the items specified in Attachment B may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.

6.      In my training and experience, persons involved with child pornography generally prefer to store depictions of child pornography on computers, removable storage devices, or other hardware or media that can store visual depictions in digital form.  The capacity of external hard drives, flash drives, and other storage media has increased dramatically in recent years and the cost of storage media has gone down.  As a result, persons involved with child pornography may store files for years at little or no cost, without the need to delete files to make room for other files.  In my training and experience, I know that information and photographs are readily transferrable from computers to cellular telephones or other portable storage media and can be easily transported to different locations.

7.      Based on my training and experience, and the experience of other agents involved with this investigation, I know that individuals involved in the sexual exploitation of children through child pornography almost always keep copies of their sexually explicit material.  One of the reasons copies are maintained is because child pornography is illegal to openly purchase, and the most common method of acquiring it is by trading with other people with similar interests.  I and other Agents also know that due

2

to the inherent illegality of these sexually explicit materials, they are most often kept in a secure place, usually a residence, to avoid detection by law enforcement. I have also learned from my training and experience, and from talking with other seasoned law enforcement officers, that possession of child pornography is continuing in nature, and oftentimes, collectors of child pornography do not quickly dispose of images they have received. To the contrary, collectors of child pornography save images and store them in secure places such as their home computers or other external devices for long periods of time.

8.      Based on my training, knowledge and experience, I am aware that individuals who commit online sexual exploitation offenses involving minors will often collect and/or view child pornography on their computer and digital media storage devices for several reasons:

a.  They will receive sexual gratification and satisfaction, and/or fantasize about sexual contact with minors by viewing minors engaged in sexual activity or sexually suggestive poses.

b.  They collect sexually explicit or sexually suggestive materials of minors in a variety of media that they use for their own sexual arousal and/or gratification.

c.  They almost always possess and maintain their material in the privacy and security of their homes or some secure location.  Child pornography distributors/collectors typically retain recordings, mailing lists, child erotica and store their child pornography amongst other, otherwise legal media or files.  Digital evidence, like child pornography contraband, is different than traditional evidence that can be concealed, sold, used and/or destroyed and is not as volatile as other illegal items like narcotics; and

d.  Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer

and surrounding area. These collections are often maintained for several years and are kept close by, to enable the collector to view the collection, which is valued highly.

9.       Child pornography collectors also may correspond with and/or meet others to share information and materials; they rarely destroy correspondence from other child pornography distributors/collectors and conceal such correspondence as they do their sexually explicit material; and they often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

10.      Collectors of child pornography prefer not to be without their child pornography for any prolonged period of time. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

## STATUTORY AUTHORITY

11.      This investigation concerns alleged violations of Title 18, United States Code, Sections 2252A(a)(1), Transportation of Child Pornography; 2252A(a)(2), Receipt and Distribution of Child Pornography and Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child Pornography or Access with Intent to View Child Pornography.

  a. Title 18, United States Code, Section 2252A(a)(1) prohibits a person from knowingly transporting child pornography using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer.

  b. Title 18, United States Code, Section 2252A(a)(2) prohibits a person from knowingly receiving or distributing any material that contains child pornography using any means or facility of interstate or foreign commerce or that has been mailed or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

  c. Title 18, United States Code, Section 2252A(a)(5)(B) prohibits a person from knowingly possessing or knowingly accessing with intent to view, any book, magazine, periodical, film, video-tape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any

4

means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

d. The term "minor," as defined in Title 18, United States Code, Section 2256(1), refers to any person under the age of eighteen years.

e. The term "sexually explicit conduct," Title 18, United States Code, Section 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

f. The term "visual depiction," as defined in Title 18, United States Code, Section 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

g. The term "computer," as defined in Title 18, United States Code, Section 1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

h. The term "child pornography," as defined in Title 18, United States Code, Section 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (a) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (b) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (c) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

## PROBABLE CAUSE

### CyberTipline Report 196428957

12.     The National Center for Missing and Exploited Children ("NCMEC") is an organization that, among other things, tracks missing and exploited children, and serves as a repository for information about child pornography. Companies that suspect child pornography has been stored or transmitted on

their systems can report that information to NCMEC in a CyberTipLine ("CT") report. To make such a report, a company providing services on the internet ("ISP") can go to an online portal that NCMEC has set up for the submission of these tips. The ISP then can provide to NCMEC information about the child exploitation activity it believes has occurred, including the incident type, the incident time, any screen or usernames associated with the activity, any IP address or port numbers it captured, as well as other information it may have collected in connection with the suspected criminal activity. Other than the incident type and incident time, the remainder of the information the ISP provides is voluntary and undertaken at the initiative of the reporting ISP. The ISP may also upload to NCMEC any files it collected in connection with the activity. The ISP may or may not independently view the content of the files it uploads. NCMEC does not review the content of these uploaded files. Using publicly available search tools, NCMEC then attempts to locate where the activity occurred based on the information the ISP provides such as IP addresses. NCMEC then packages the information from the ISP along with any additional information it has, such as previous related Cyber Tips, and sends it to law enforcement in the jurisdiction where the activity is thought to have occurred.

13.     On September 3, 2024, I received CT Report 196428957 from NCMEC by way of the Arkansas State Police (ASP) Internet Crimes Against Children (ICAC) Task Force, regarding online child pornography. In a CT Report submitted on or about July 13, 2024, Dropbox[1] reported that user account "Lee Garner" had uploaded 63 files of possible child pornography. The NCMEC report further specified that Dropbox had viewed every file in the report and described the files as Apparent Child Pornography, Child Unclothed, Child Clothed, or CP (Unconfirmed). The FBI was provided a copy of the files uploaded by Dropbox user "Lee Garner". A review of CT Report 196428957 indicated the following:

    a. **NCMEC CyberTipline Report Number:** 196428957

---

[1] Dropbox is a cloud storage provider who provides a variety of on-line services, including online storage access, to the general public.

b. **Incident Date:** 07-12-2024 at 10:44:57 UTC

c. **Username:** Lee Garner

d. **ESP User ID:** 615720296

e. **Email Address:** liamtheshit26@gmail.com (Verified 10-20-2016 at 16:14:32 UTC)

f. **Login IP Address:** 206.255.174.22 on 07-13-2024 at 10:14:57 UTC

14.     On September 5, 2024, I reviewed the files provided by Dropbox and determined CT Report 196428957 contained thirty-seven (37) unique files and twenty-four (24) duplicate files, totaling sixty-one (61) files, which met the definition of child pornography. The following is a description of one image and one video as observed:

a. A photograph depicting an adult male inserting his erect penis into a crying infant's mouth. Filename: 2.jpg

b. A fifty-nine minute and four second (59:04) video of an adult male and female engaged in oral-vaginal penetration, digital-vaginal penetration, anal penetration with a device commonly referred to as a "dildo", oral-penile penetration, and penile-vaginal penetration with two minor females, one approximately 10-12 years old and the other approximately 12-14 years old. Throughout the video, all four individuals can be seen completely nude, and the adults can be seen engaged in various sex acts with the minor females. Filename: Pthc Pedo – 11Yo & 13Yo Girls Play With Mom"s Pussy and Fuck Dad).avi

15.     Based on open-source research, the IP Address 206.255.174.22 is assigned to WEHCO Video/Cablelynx. Pursuant to an administrative subpoena issued by the ASP ICAC Task Force on July 23, 2024, WEHCO Video, identified the subscriber for the Cablelynx account from July 12, 2024 at 10:44:57 UTC to July 13, 2024 at 10:14:57 UTC as Ricky Denton, 1011 Fort Lookout Manor, Camden, Arkansas, 71701, which is in the Western District of Arkansas.

16.    Based on open-source research, Ricky Denton died on or about June 16, 2024, which was approximately one month before Dropbox user Lee Garner was reported to NCMEC. Open-source research also indicated Ricky Denton had three children: Misty, Rickey, and Glenn DENTON.

### Federal Search Warrants for Dropbox User "Lee Garner"

17.    On September 10, 2024, the Hon. Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas, issued a federal search warrant[2] for the Dropbox account associated with username Lee Garner. Pursuant to that warrant, on September 12, 2024, Dropbox provided records associated with Dropbox account Lee Garner, which included approximately 3,809 files of pornographic material including adults and minors. A comprehensive review of the files is on-going, but during a preliminary review of the files, I observed multiple files which depicted child pornography as defined by Title 18, United States Code, Section 2256(8). The following is a description of one video file as observed:

   a.    An eight minute and four second (8:04) "compilation"-style video, depicting multiple pre-pubescent minor females, ranging in age from approximately four to six years old to twelve to fourteen years old engaged in digital-vaginal, oral-penile, penile-vaginal, and penile-anal penetration with adult males, minor males, adult females, and minor females. Filename: VID_20150429_043425.

### Identification of Glenn DENTON as User of Reported Account and Location at Target Premises

18.    On or about September 19, 2024, pursuant to an administrative subpoena issued by the FBI, Google LLC provided subscriber and IP logs for the email account associated with Dropbox user Lee Garner. A review of the production revealed the following subscriber information:

   a.    **Email Address:** liamtheshit26@gmail.com

   b.    **Subscriber:** Liam Denton

---

[2] *See* Docket No. 1:24-cm-20

    c. **Account Status:** Active

    d. **Recovery SMS:** +234 704-769-8877

    e. **Recovery Email:** lil_dud_c23@yahoo.com

19.    Open-source and database checks revealed no information that Liam Denton is a true name of an individual in the Western District of Arkansas. Additionally, on or about September 24, 2024, Yahoo Inc. provided subscriber and IP logs for the email address lil_dud_c23@yahoo.com pursuant to an administrative subpoena issued by the FBI. A review of the production revealed the following subscriber information:

    a. **Email Address:** lil_dud_c23@yahoo.com

    b. **Subscriber:** Glenn DENTON

    c. **Account Status:** Active

    d. **Recovery SMS:** +1 870-675-8719 verified on 2023-12-25 at 16:15:18 UTC

    e. **Recovery Email:** liamtheshit26@gmail.com verified on 2024-03-28 at 01:33:31 UTC

20.    A review of recent IP addresses used by lil_dud_c23@yahoo.com revealed the account utilized IP address 206.255.174.22, the IP address reported in CT Report 196428957, to login on July 9, 2024. This login utilizing the reported IP address occurred approximately four days before Dropbox reported user Lee Garner. Additionally, Yahoo account lil_dud_c23@yahoo.com utilized IP address 206.255.175.86 two times for the most recent logins occurring on September 12, 2024. Based on open-source research, the IP address 206.255.175.86 is assigned to WEHCO Video/Cablelynx. Pursuant to an administrative subpoena issued by the FBI on October 3, 2024, WEHCO Video, identified the subscriber for the Cablelynx account from July 1, 2024, through October 2, 2024, as Glenn DENTON with the **TARGET PREMISES** as DENTON's address.

21.    According to open-source research, the recovery SMS phone number associated with lil_dud_c23@yahoo.com is assigned to Verizon Wireless. On or about October 17, 2024, pursuant to an

administrative subpoena issued by the FBI, Verizon Wireless provided subscriber information for the phone number 870-675-8719. A review of the production revealed the following subscriber information:

    a. **Phone Number:** +1 870-675-8719

    b. **Subscriber:** Glenn DENTON

    c. **Effective Date:** 02/23/2023

    d. **Account Status:** Disconnected 05/11/2024

    e. **Address:** 618 Lincoln Center, Camden, AR 71701

22.    On October 24, 2024, I received information from the Camden Police Department that on or about October 23, 2024, Camden Police Department responded to a complaint made by Shawn Bortoluzzi, DENTON's nephew, regarding sexual indecency with a child. In the complaint, Bortoluzzi claimed he, his girlfriend, and his two daughters were temporarily residing with DENTON at the **TARGET PREMISES**. While at the **TARGET PREMISES**, Bortoluzzi observed DENTON masturbating in front of his infant daughter and ejaculating onto the floor in front of her. The incident is currently being investigated by Camden Police Department.

### COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

24.    As described above and in Attachment B, this application seeks permission to search for records that might be found in the **TARGET PREMISES**, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

25.    *Probable cause.* I submit that if a computer, storage medium, or cellular telephone is found in the **TARGET PREMISES**, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

26.  *Forensic evidence*.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the

11

occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence

13

on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.  For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

27.  *Necessity of seizing or copying entire computers or storage media.*  In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media.  Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure the

14

accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

    a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

    b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

    c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

28.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

29.    Therefore, I respectfully request this Court to issue a warrant to search the **TARGET PREMISES** described in Attachment A, and any computer and computer media, including cellular telephones and external storage devices located during a search of the **TARGET PREMISES** described in Attachment A, to seize the evidence, fruits, and instrumentalities described in Attachment B, which individually or collectively constitute violation(s) of Title 18, United States Code, Sections 2252A(a)(1), Transportation of Child Pornography; 2252A(a)(2), Receipt and Distribution of Child Pornography and Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child Pornography or Access with Intent to View Child Pornography.

## CONCLUSION

30.    Based on the foregoing, I submit there is probable cause to believe Glenn DENTON that is engaged in or possesses evidence related to activities constituting violations of Title 18, United States Code, Sections 2252A(a)(1), Transportation of Child Pornography; 2252A(a)(2), Receipt and Distribution of Child Pornography and Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child Pornography or Access with Intent to View Child Pornography. Furthermore, I have established that DENTON's primary residence is currently the **TARGET PREMISES**. Therefore, for these reasons and the reasons set forth above, there is probable cause to believe that evidence of transportation, receipt,

16

distribution, or possession of child pornography will be located in the **TARGET PREMISES**, as is further described in Attachment A.

31.    Therefore, I respectfully request this Court to issue a warrant to search the **TARGET PREMISES** described in Attachment A to seize the evidence, fruits, and instrumentalities described in Attachment B of violations of Title 18, United States Code, Sections 2252A(a)(1), Transportation of Child Pornography; 2252A(a)(2), Receipt and Distribution of Child Pornography and Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child Pornography or Access with Intent to View Child Pornography.

32.    Permission is expressly sought to seize any computer hardware, computer software, external storage devices, cellular telephones, and any computer-related documentation located at the **TARGET PREMISES** and subsequently conduct an on-site and off-site forensic examination, as necessary, using whatever data analysis techniques are needed to seize the evidence, fruits, and instrumentalities listed in Attachment B.   Furthermore, I also request that this Court authorize law enforcement officers to press the fingers (including thumbs) of DENTON to the Touch ID sensor of the Cellular Phone or present DENTON's iris or face to the device's camera in an attempt to unlock the device via Touch ID or Facial Recognition to search the contents as authorized by this warrant.

Respectfully submitted,

**/s/ Warren W. Rooney (telephonically)**
Warren W. Rooney
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this ____ day of October, 2024.

Honorable Christy D. Comstock
United States Magistrate Judge

17